IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RODNEY J. WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 17-0395-MU |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Rodney J. Washington brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), based on disability. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 20 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 22. Upon consideration of the administrative record, Washington's brief, the Commissioner's brief, all other documents of record, and oral argument, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 20 ("An appeal from a judgment entered by a Magistrate

## I. PROCEDURAL HISTORY

On August 29, 2013, Washington applied for a Period of Disability and DIB, under Title II of the Social Security Act, and for SSI, based on disability, under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383d, alleging disability beginning on December 31, 2012. (Tr. 299-308). After his application was denied at the initial level of administrative review on December 17, 2013, Washington requested a hearing by an Administrative Law Judge (ALJ). (Tr. 170-77). After an initial hearing was held on May 12, 2015, the ALJ issued an adverse decision on June 5, 2015, which was reversed and remanded by the Appeals Council on October 20, 2016. (Tr. 43-44). A second hearing was held on February 24, 2017, which also resulted in the ALJ issuing an unfavorable decision finding that Washington was not under a disability from the date the application was filed through the date of the decision, March 7, 2017. (Tr. 18-80). Washington appealed the ALJ's decision to the Appeals Council, which denied his request for review on July 31, 2017. (Tr. 1-5).

After exhausting his administrative remedies, Washington sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on December 8, 2017. (Docs. 11, 12). On January 3, 2018, Washington filed a brief in support of his claim. (Doc. 13). The Commissioner filed her brief on March 20, 2018. (Doc. 17). Oral argument was held before the undersigned Magistrate Judge on May 9, 2018. (Doc. 21). The case is now ripe for decision.

---

Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

## II. CLAIMS ON APPEAL

Washington presents the following claims in this appeal:

1. Whether the ALJ committed reversible error in violation of Social Security Rulings 96-8p and 96-6p by failing to assess any non-exertional limitations when formulating his Residual Functional Capacity (RFC) despite finding that he had the severe impairment of mild intellectual disability;

2. Whether the ALJ committed reversible error in applying Rule 201.24 of the Medical-Vocational Guidelines despite finding that he had non-exertional limitations from his severe impairment of mild intellectual disability; and

3. Whether the ALJ erred in failing to find that his mental impairment met the requirements of Listing 12.05(b).

(Doc. 13 at p. 2).

## III. BACKGROUND FACTS

Washington was born on November 11, 1977, making him 36 years old at the time he filed his claim for benefits. (Tr. 299). Washington alleged disability due to slow learning, bad knees, and a right arm problem. (Tr. 376). He left high school after 10th grade in 1996, after having attended special education classes when he was in school. (Tr. 377). When he was 14, he was assessed with a full-scale IQ score of 47. (Tr. 46). He has not completed any type of specialized job training, trade, or vocational school. (*Id.*) According to Washington, he cannot read or write at a functional level. (Tr. 46). Since high school, he has worked at various times doing lawn service, disposing of tires, and doing various construction-type work, such as mixing mud for a brick layer. (*Id.*).

Washington generally handles his own personal care. (Tr. 392-93, 525). During the relevant period here, he either lived with his girlfriend and two children or alone. (*Id*.). His girlfriend and his sisters help him take care of his children. (Tr. 392). He is able to prepare simple meals, like sandwiches, canned foods, eggs, and Hot Pockets, and does so about twice a week. (Tr. 70, 393, 525). He is able to pick up trash, rake, and cut the grass with support, but according to him and his girlfriend, he needs help to stay on task. (*Id*.). He does not drive, but can meet basic transportation needs. (Tr. 394, 525). He goes outside at his home on a daily basis. (*Id*.). He does not pay bills, handle a savings account, or use a checkbook or money orders because he can't count, read, or understand well enough to do these things, but he can manage small amounts of money. (Tr. 394, 525). He spends his time watching television, walking, looking at comic books, and visiting his mother's home and sister's home which are next to his home. (Tr. 395). He is able to wash his own clothes. (Tr. 525). He alleges that his condition affects his talking, memory, completing tasks, concentration, understanding, and following instructions, that he gets upset when he is told to do things that he can't seem to understand, and that he has trouble following written instructions because he can barely read, but can follow spoken instructions when spoken slowly and in simple words. (Tr. 396). He gets along with authority figures, but does not handle stress or changes in routine well. (Tr. 397).

Washington testified at the first hearing in May of 2015 that he cannot do his prior jobs because of problems with his right hand and knee. (Tr. 71-74). At the second hearing in February of 2017, he continued to complain of problems with his right hand and testified as to his reading and math difficulties, as well as some problems

4

interacting adequately with other people. (Tr. 46-49). After conducting the hearing in February of 2017, the ALJ again made a determination that Washington had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 36-65).

### IV. ALJ'S DECISION

The ALJ made the following relevant findings in his March 10, 2017 decision:

**3. The claimant has the following severe impairments: mild intellectual disability; history of alcohol dependence; and status post right forearm injury (20 CFR 404.1520(c) and 416.920(c)).**

\* \* \*

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

All listings were analyzed. No listing was met or equaled, whether the impairment was analyzed individually or in combination.

\* \* \*

Listing 12.05 is met when the requirements in paragraphs A or B are satisfied.

\* \* \*

In this case, these requirements are not met because while the claimant has significantly subaverage general intellectual functioning, as evidenced by his most recent IQ scores, he does not have significant deficits in adaptive functioning. The claimant alleges that he is disabled in part because he is a slow learner (Exhibit B11E). He has undergone several mental consultative evaluations in connection with prior applications and the current application.

[Discussion of medical records and other evidence of Washington's adaptive functioning (Tr. 26-27)].

... Notwithstanding the claimant's limited education and reported inability to read and write, he worked and earned above the substantial gainful activity amount in 2002, 2006, 2007, 2008, 2009, 2010, 2011, and 2012 (Exhibits B9D, B10D). The claimant

5

also worked in 2016 (Exhibit B12D) and as of January 19, 2017 he was working as a laborer at Jackson Landfill, LLC (Exhibit B11D). According to Mr. Taylor, with Jackson Landfill, he is "accommodating [the claimant] by letting him pick up paper, cleaning, and rolling tires off of trailers." Mr. Taylor did not indicate that the claimant is unable to perform those activities as required or that he is receiving any other accommodations. There is no evidence in the record that the claimant received special accommodations from any of his other employers. At the hearing in February 2017, the vocational expert classified the claimant's past work as a tire disposer, an unskilled occupation, and as a laborer, a semiskilled occupation.

Moreover, the claimant has lived alone (Exhibits B3F, B10F). He has had a girlfriend and has two children. The claimant is able to feed, dress, groom and bathe himself without assistance (Exhibit B10F). He can manage small amounts of money, prepare simple meals, use a telephone, make common purchases, wash clothes and meet his basic transportation needs although he does not have a driver's license. The claimant was able to establish and maintain rapport with the consultative examiners. He regularly spends time with family and his girlfriend. He denied having any problems getting along with family, friends, neighbors or others (Exhibit B13E).

* * *

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium unskilled work as defined in 20 CFR 404.1567(c) and 416.967(c).**

* * *

The claimant alleges that he is disabled because he is a slow learner and because of problems with his right arm and knees (Exhibit B11E).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

* * *

The undersigned has additionally limited the claimant to unskilled work to account for his limited intellectual functioning and history of alcohol use disorder. The ability to perform unskilled work, notwithstanding the claimant's low IQ scores, is supported by his work history and adaptive functioning. The claimant has worked for several years at the substantial gainful activity level, including semiskilled work. There is no evidence in the record that the claimant received significant accommodations at work. As of January 2017, he was working at Jackson Landfill (Exhibit B11D). Although he is

6

reportedly getting some sort of accommodation by being allowed to pick up paper, clean and roll tires, the exact nature or extent of the accommodations is not clear. There is no evidence in the record that the claimant received special accommodations from any of his other employers. The claimant has also been able to live alone and meet his own needs. He has had a girlfriend and he has two children.

* * *

Dr. Starkey opined that the claimant's ability to understand, remember, and carry out simple/concrete instructions is adequate. Dr. Starkey further opined that the claimant's ability to work independently, work with supervisors, coworkers and the public, and work with job pressures is marginal to poor. The undersigned gives great weight to Dr. Starkey's opinion regarding the claimant's ability to understand, remember and carry out simple/concrete instructions, as this is consistent with his work activity and adaptive functioning as well as the opinions of Dr. DeFrancisco and Dr. Brantley, which the undersigned finds persuasive. Dr. DeFrancisco, who evaluated the claimant in 2006 in connection with a prior application, opined that the claimant has the ability to understand, remember, and carry out simple instructions and handle work pressures consistent with blue-collar work (Exhibit B6F). Dr. Brantley also believed that the claimant could continue working (Exhibit B3F). The undersigned gives no weight to Dr. Starkey's opinion regarding the claimant's ability to perform other mental work related activities. While the claimant's mild intellectual disability can reasonably be expected to cause some limitations in terms of his ability to perform complex tasks, there is no evidence in the record that his ability to interact with others or otherwise perform unskilled work is substantially limited.

The undersigned gives partial weight to the opinion of Dr. Koulianos (Exhibits B5A, B7A). Dr. Koulianos completed a Mental Residual Functional Capacity Assessment in which she opined that the claimant is able to perform unskilled work with no more than moderate mental functional limitations. Although Dr. Koulianos found that the claimant has moderate social interaction limitations, the undersigned finds that the claimant's ability to interact with others is only mildly limited and therefore did not include any social limitations in the residual functional capacity. This is supported by the record as a whole, including the psychological consultative evaluations, which do not document any problems in terms of the claimant's ability to interact with the examiners or their staff or to establish and maintain rapport, mental health treatment records showing largely normal mental status exams, the absence of mental health treatment in almost two years, and the claimant's reported social interactions. The claimant regularly spends time with family. He has lived with a girlfriend and he denied having any problems getting along with friends, family, neighbors or others (Exhibit B13E).

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

7

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Based on a residual functional capacity for the full range of medium work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 203.26. Additionally, because the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2 reflect the potential occupational base for all unskilled work (SSRs 83-10 and 85-15), and the claimant is able to meet the mental demands of unskilled work, the medium occupational base is not significantly eroded due to the limitation to unskilled work. Medical-Vocational Rule 203.26 thus directs a finding of "not disabled."

**11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 23-27, 29-31, 32).

## V.  DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§

404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as

unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Washington asserts three grounds in support of his contention that the ALJ erred in concluding that he was not entitled to benefits: 1) the ALJ committed reversible error in violation of Social Security Rulings 96-8p and 96-6p by failing to assess any non-exertional limitations when formulating his Residual Functional Capacity (RFC) despite finding that he had the severe impairment of mild intellectual disability, 2) the ALJ committed reversible error in applying Rule 201.24 of the Medical-Vocational Guidelines despite finding that he had non-exertional limitations from his severe impairment of mild intellectual disability, and 3) the ALJ erred in failing to find that his mental impairment met the requirements of Listing 12.05(b). (Doc. 13 at p. 2). Conversely, the Commissioner asserts that the ALJ properly applied the five-step sequential process in making his determination. The Court will address each of these issues in the order presented by Washington.

### A. Washington's RFC Determination

After concluding that Washington had the following severe impairments: mild intellectual disability, history of alcohol dependence, and status post right forearm injury, the ALJ found Washington to have the RFC to perform the full range of medium, unskilled work, as defined in 20 CFR 404.1567(c) and 416.967(c). (Tr. 23, 29). A

claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those which are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. Id. at *3. The ALJ is exclusively responsible for determining an individual's RFC. 20 C.F.R. § 404.1546(c).

Washington asserts that the ALJ erred because he failed to assess any non-exertional limitations in his RFC despite finding that he had the severe impairment of mild intellectual disability. Washington's argument in this regard is factually incorrect. The ALJ did, as explained in his decision, take into account Washington's non-exertional limitations by assessing him as having the RFC to perform the full range of medium, **unskilled** work. (Tr. 29-31). Specifically, with regard to his non-exertional limitations, the ALJ stated: "The undersigned has additionally limited the claimant to

11

unskilled work to account for his limited intellectual functioning and history of alcohol use disorder. The ability to perform unskilled work, notwithstanding the claimant's low IQ scores, is supported by his work history and adaptive functioning." (Tr. 30). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time, usually within 30 days." *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872 (11th Cir. 2016) (citing 20 C.F.R. § 404.1568(a)). Washington argues that the ALJ erred by limiting him to "unskilled" work when he should have been limited to "simple work." As discussed in *Chambers*, 662 F. App'x at 872, the definition of "unskilled work" encompasses simple work. Therefore, this argument fails.

At oral argument, Washington argued that the ALJ's finding that his ability to perform unskilled work based on his work history is not supported by substantial evidence because his most recent employer provided a letter stating that he employed Washington essentially as a favor to him. (Tr. 330). In that letter, his employer stated that Washington was working at the Jackson Landfill as a laborer, picking up paper, cleaning, and rolling tires off of trailers. (Tr. 330). The letter does not indicate that the employer was providing him any accommodations to get his job duties done, but was accommodating him by giving him a job to pay his bills when he had other means to get these duties done. There is evidence in the record that Washington has worked as a laborer in the past. There is no indication in the record that Washington does not have the ability to perform this type of unskilled job. (Tr. 358, 383).

A review of the record reveals that the ALJ was presented with multiple opinions regarding Washington's mental functional limitations. In this case, the ALJ discussed

the medical evidence in detail, including the weight accorded to the medical opinion evidence and the grounds therefor. The ALJ also described the information provided by Washington in his Function Report and at the hearing concerning his limitations and activities, as well as the functional abilities noted by his various physicians. Dr. Starkey, who examined Washington and administered IQ testing, opined that his ability to understand, remember, and carry out simple/concrete instructions appeared adequate. (Tr. 528). This finding also supports the ALJ's conclusion that Washington had the ability to perform unskilled work. *See, e.g., Anderson v. Astrue*, Civ. A. No. 2:11-00046-N, 2011 WL 3843683, at * 3 (S.D. Ala. Aug. 30, 2011) (holding that the social security regulations, "read together, establish that unskilled work requires the ability to understand, carry out, and remember simple instructions and duties …"). As will be discussed in more detail below, substantial evidence supports the ALJ's finding that Washington has adequate adaptive functioning to perform unskilled work.

Having reviewed the evidence and considered the arguments made by Washington and being mindful of the admonishment that the reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner, the Court finds that the RFC assessment made by the ALJ was supported by substantial evidence.

### B. Application of Rule 201.24

Washington next argues that the ALJ committed reversible error in applying Rule 201.24 of the Medical-Vocational Guidelines despite finding that he had non-exertional limitations from his severe impairment of mild intellectual disability. (Doc. 13 at p. 4). Specifically, Washington claims that the ALJ erred in applying the Guidelines when he

concluded that Washington had the RFC to perform the full range of medium work without any non-exertional limitations because he did not take into account his finding that Washington would have moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace and mild limitations in interacting with others and managing himself. (*Id*. at pp. 5-6). In his brief, Washington overlooked the fact that the ALJ limited him to unskilled work based on the foregoing non-exertional limitations. The ALJ concluded and clearly stated that Washington's mental deficits did not result in a significant erosion of the medium occupational base. (Tr. 32).

As set forth above, at step five of the sequential evaluation, the Commissioner has the burden of establishing that the claimant is capable of performing jobs available in the national economy, considering his RFC, age, education, and work experience. In making that determination, the ALJ may either apply the Guidelines, also referred to as the Grids, or consult with a vocational expert. *See Winschel*, 631 F.3d at 1180. In *Phillips v. Barnhart,* 357 F.3d 1232, 1243 (11th Cir. 2004), the Eleventh Circuit held that, once an ALJ has determined that a claimant can perform a full range of work at a given level, the ALJ must then determine to what extent the claimant's non-exertional limitations affects his ability to secure employment at that level in the national economy. "When considering [the claimant's] nonexertional limitations, the ALJ need only determine whether [the claimant's] nonexertional impairments significantly limit [his] basic work skills." *Id*. The Court concluded that the Guidelines may be relied upon, to the exclusion of vocational expert testimony, when the non-exertional impairments are not so severe as to prevent a wide range of employment at a designated work level. *Id.*

(citing *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995)); *see also Syrock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985) (holding that non-exertional limitations may cause the Guidelines to be inapplicable only where the limitation is severe enough to prevent a wide range of gainful employment at a particular level); *Reilly v. Comm'r of Soc. Sec.*, No. 6:07-cv-2042, 2009 WL 799450, at *19 (M.D. Fla. Mar. 24, 2009) (holding that "[i]f nonexertional impairments do not significantly limit [a claimant's] basic work skills, testimony from a VE is not required"). As noted by the Commissioner, the Medical-Vocational Guidelines take "administrative notice … of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels," including the medium level. *See* 20 CFR Pt. 404, Subpt. P, App. 2, § 200.00(b) (2009).

In this case, the ALJ first concluded that Washington had the RFC for the full range of medium work. He then determined that Washington was able to meet the mental demands of unskilled work and concluded that "the medium occupational base is not significantly eroded due to the limitation to unskilled work." (Tr. 32). Although the ALJ did find that Washington had moderate limitations in understanding, remembering, and applying information, he discussed with approval the fact that at least two of his physicians found that he had the ability to understand, remember, and carry out ***simple*** instructions. This evidence is consistent with the ability to perform unskilled work. The Court finds that the ALJ's conclusions in this regard are supported by substantial evidence based on Washington's medical records, his work experience, which exemplifies that he has been able to perform both unskilled and semi-skilled work in the past at the substantial gainful activity level, and his activities, as outlined throughout the ALJ's opinion and the record.

**C. Listing 12.05(b)**

Washington also contends that the ALJ erred in failing to find that his mental impairment met the requirements of Listing 12.05(b). (Doc. 13 at pp. 6-8). To establish disability under Listing 12.05(b), the claimant must establish:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (see 12.00E3); or

    d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, the ALJ concluded that, "while [Washington] has significantly subaverage general intellectual functioning, as evidenced by his most recent IQ scores, he does not have significant deficits in adaptive functioning." (Tr. 26). As noted above and in the full text of the ALJ's opinion, the ALJ discussed the medical findings, as well as Washington's work history and his own statements regarding his functioning, and based upon the totality of the evidence found that Washington had *moderate* limitations in understanding, remembering or applying information (Tr. 27), *mild*

limitations in interacting with others (Tr. 27-28), *moderate* limitations in concentrating, persisting, or maintaining pace (Tr. 28), and *mild* limitations in adapting or managing oneself (Tr. 28). Accordingly, because he had no marked or extreme limitations in any of these areas, the ALJ found that Listing 12.05(b) was not met. The Court finds, after having reviewed the evidence showing that Washington has maintained employment at the substantial gainful employment level in the past, that he can live alone, that he can handle his own personal care, that he has at least some close personal relationships, and that he can understand, remember, and apply simple information and instructions, that substantial evidence supports the ALJ's assessment of Washington's mental functional capacity and his conclusion that the requirements of Listing 12.05(b) were not met.

## **CONCLUSION**

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's Decision that Washington is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **20th** day of **June, 2018**.

s/P. BRADLEY MURRAY  
**UNITED STATES MAGISTRATE JUDGE**